UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 04-10115-RCL

UNITED STATES OF AMERICA

v.

KARL LAWRENCE PRESCOTT

MEMORANDUM AND ORDER ON GOVERNMENT'S
MOTION FOR DETENTION

MAY 12, 2004

BOWLER, Ch.U.S.M.J.

On or about April 15, 2004, defendant Karl Lawrence Prescott (the "defendant"), was arrested pursuant to a seven count Indictment returned in this district on April 8, 2004. The Indictment charges the defendant and codefendants Spencer Gray[1] (codefendant "Gray") and Kevin Vickers[2] (codefendant

---

[1] At the conclusion of the detention hearing on April 22, 2004, Gray entered into a period of voluntary detention. Therefore, this Memorandum will only reiterate that portion of the detention hearing testimony that is relevant to the defendant.

[2] At his initial appearance before this court on April 22, 2004, Vickers, who is currently serving a state sentence in Massachusetts, waived his rights under the Interstate Agreement on

"Vickers")(collectively the "codefendants"). The defendant is named in Count Five of the Indictment which charges the defendant and Gray with distribution of cocaine base in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(iii), all in violation of Title 21, United States Code, Section 846.

The defendant had his initial appearance before this court on April 15, 2004. He was represented by court appointed counsel. The government moved to detain the defendant on the grounds that there is no condition or combination of conditions that will reasonably assure (1) the safety of any other person and the community and (2) the appearance of the defendant. 18 U.S.C. §§ 3142 (f)(1)(C) and (f)(2)(A). The government moved for a three day continuance and a detention hearing was scheduled before this court on April 22, 2004.

On that date this court conducted a hearing on the issue of detention. The defendant was represented by court appointed counsel. The government called one witness speaking to the issue of detention. The defendant did not call any witnesses. This court took the issue of detention under advisement.

## DISCUSSION

---

Detainers and returned to state custody. Upon completion of his state sentence Vickers will appear before this court to re-examine the issue of detention.

I.  A.  Under the provisions of 18 U.S.C. § 3142(c), "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person." Thus, a defendant must be released under the provisions of 18 U.S.C. § 3142(b) or (c), or be detained pending trial under the provisions of 18 U.S.C. § 3142(e) and after a hearing pursuant to 18 U.S.C. § 3142(f).  See 18 U.S.C. § 3142(a).

Under 18 U.S.C.§ 3142(e), a defendant may be ordered detained pending trial if the judicial officer finds one of the following three conditions to be true that: (1) by <u>clear and convincing</u> evidence, after a detention hearing under the provisions of § 3142(f), ". . . no condition or combination of conditions (set forth under 18 U.S.C.§ 3142(b) or (c)) will reasonably assure the safety of any other person or the community . . .;" (2) by <u>a preponderance of</u> the evidence, after a detention hearing under the provisions of 18 U.S.C. § 3142(f), ". . . no condition or combination of conditions (set forth under 18 U.S.C. § 3142(b) or (c)) will reasonably assure the appearance of the person as required . . .;" or (3) there is a serious risk the defendant will flee.[3] This determination is made by the court at

---

[3] The distinction between the former and the latter are made clear by the very language of 18 U.S.C. § 3142(f). In the last paragraph of that section, Congress has stated there must be <u>clear and convincing</u> evidence to authorize pretrial detention when the question is whether any condition or combination of conditions "will reasonably assure the <u>safety of any other person and the community</u> . . .." (Latter emphasis added.) By not requiring that same standard vis a vis an assessment of risk of flight, it is clear that a lesser standard--i.e., preponderance of the evidence--

the conclusion of a detention hearing.

B. The government is entitled to move for detention in a case that:

(1) involves a crime of violence within the meaning of 18 U.S.C. § 3156(a)(4);[4]

(2) involves an offense punishable by death or life imprisonment;

(3) involves an offense prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act for which the maximum authorized punishment is imprisonment for ten years or more;[5] or

---

applied. That is precisely the holding in the Second Circuit. See e.g., United States v. Jackson, 823 F.D 4, 5 (D.C.Cir. 1987); United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. 1986), cert. dismissed, 107 S.Ct. 562 (1986); see also United States v. Patriarca, 948 F.2d 789, 792 (1st Cir. 1991).

[4] Section 3156 of Title 18 of the United States Code defines a crime of violence as:
    (A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another, or

    (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
18 U.S.C. § 3156(a)(4).

[5] The maximum penalty is that provided by the statute defining and/or providing the punishment for the substantive offense--not the sentence, or even the maximum sentence, which might otherwise be imposed under the federal Sentencing Guidelines. See United States v. Moss, 887 F.2d 333, 336-7 (1st Cir. 1989).

(4) involves any felony alleged to have been committed after the defendant has been convicted of two or more crimes of violence, or of a crime, the punishment for which is death or life imprisonment, or a ten year [or more] offense under the Controlled Substances Act or the Controlled Substances Import and Export Act.

Additionally, the government or the court <u>sua sponte</u> may move for, or set, a detention hearing where there is a serious risk of flight, or a serious risk of obstruction of justice or threats to potential witnesses. <u>See</u> 18 U.S.C. § 3142(f).

C. In determining whether there are conditions of release which will reasonably assure the appearance of the person and the safety of any other person and the community, this court must take into account:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the accused;
>
> (3) the history and characteristics of the person, including--
>
>> (A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

5

> (B) whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and
>
> (4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

    D.   The burden of persuasion remains with the government to establish "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." The burden then rests on the defendant to come forward with evidence indicating that these general findings are not applicable to him for whatever reason advanced. The government must satisfy its position with respect to risk of flight by a preponderance of evidence and with respect to dangerousness by clear and convincing evidence. <u>See</u> <u>supra</u> footnote 3. This court must then weigh all relevant factors [set forth under §3142(g)] and determine whether "any condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." The decision is an individualized one based on all relevant factors. <u>United States v. Patriarca</u>, 948 F.2d 789, 794 ( Cir. 1991); <u>see</u> <u>United States v. Jessup</u>, 757 F.2d 378, 387-88

(1st Cir. 1985).

Moreover, one may be considered a danger to the community even in the absence of a finding by clear and convincing evidence that the accused will engage in _physical violence_. Conversely, as noted by the Committee on the Judiciary (Report of the Committee on the Judiciary, United States Senate), on S. 215. 98th Congress, Report No. 98-147 (May 25, 1983):

> The concept of defendant's dangerousness is described throughout this chapter by the term "safety of any other person or the community." The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger _that the defendant might engage in criminal activity to the detriment of the community_. The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.... The Committee also _emphasizes_ that the risk that a defendant will _continue to engage_ in drug trafficking constitutes a danger to the "safety of any other person or the community."

Id. (Emphasis added; footnotes omitted); see United States v. Patriarca, 948 F.2d 789, 792, n.2 (1st Cir. 1991) (danger to community does not refer only to risk of physical violence); see also United States v. Tortora, 922 F.2d 880, 884 (1st Cir. 1990) (stating danger in context of 18 U.S.C. § 3142(g) not meant to

refer only to physical violence); United States v. Hawkins, 617 F.2d 59 (5th Cir.), cert. denied, 449 U.S. 962 (1980) (trafficking in controlled substances).[6]

The issue critical to determining whether to detain a defendant is therefore, whether, with respect to the defendant, based on the guidelines set forth supra in part C of this Order, any condition or combination of conditions of release exist that will reasonably assure the safety of any person and the community; and the presence of the defendant. 18 U.S.C. § 3142(e).

E. "Where, as here, a defendant is charged with a controlled substance offense punishable by a maximum term of 10 years or more, the government is aided by § 3142(e)'s rebuttable flight presumption."[7] United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987) (per curiam). The presumption is not limited to risk of flight. Rather, the presumption has two

---

[6] A defendant may be ordered detained as a danger to the safety of another or to the community, however, only if the judicial officer determines that a detention hearing is appropriate under the provisions of moved under 18 U.S.C. § 3142(f)(1), and the judicial officer has determined that a hearing is appropriate under that latter section. See United States v. Ploof, 851 F.2d 7 (1st Cir. 1988).

[7] The presumption reflects Congressional findings that persons who deal in drugs often have the necessary resources and foreign ties to escape to other countries. United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987) (per curiam). Consequently, imposing "a large bond is often ineffective in deterring flight." United States v. Perez-Franco, 839 F.2d 867, 869-70 (1st Cir. 1988).

8

components. One component is that the person poses a risk of flight and the second component is that the person "represents a danger to the community." United States v. Moss, 887 F.2d 333, 335 n.3 (1st Cir. 1989) (per curiam).

Thus, under section 3142(e) the judicial officer must consider the rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act or an offense under 18 U.S.C. § 924(c), the use of a firearm to commit a felony. 18 U.S.C. § 3142(e).

The presumption raised as a result of finding probable cause that a defendant committed the relevant narcotics offense is always entitled to evidentiary weight, the amount of which, if at all, depends on the nature of the production by the defendant and the other factors set forth under § 3142(g). The defendant, however, "bears only the burden of production." United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988). As explained by the United States Court of Appeals with regard to the statutory presumption of section 3142(e):

> Section 3142(e), however, only imposes a burden of production on a defendant. The burden of persuasion

9

> remains with the government. Nevertheless, even after
> a defendant has introduced some evidence to rebut the
> flight presumption, the presumption does not disappear,
> but retains evidentiary weight--the amount depending on
> how closely defendant's case resembles the congressional
> paradigm, <u>Jessup</u>, 757 F.2d at 387--to be considered along
> with other factors.

<u>United States v. Palmer-Contreras</u>, 835 F.2d at 17-18; <u>see also</u>, <u>United States v. Perez-Franco</u>, 839 F.2d at 869-70.

Finally, it is important to note that the presumption is triggered by the statutory penalty prescribed irrespective of the actual or likely sentence imposed upon the particular defendant. See <u>United States v. Moss</u>, 887 F.2d 333, 337 (1st Cir. 1989) (per curiam). The fact that a defendant may receive a sentence of less than ten years does not make the presumption inapplicable. <u>Id</u>. at 337. Rather, this court may consider such a factor with regard to the weight this court gives to the presumption. <u>Id</u>. At 337.

II. The defendant, Karl Lawrence Prescott, is 21 years of age. He was born in Boston on January 18, 1983. He attended school in Massachusetts and Georgia, where he resided with his father for five years. He completed the eleventh grade at Madison Park High School before being expelled for disciplinary reasons.

The defendant's mother lives in Dedham with her husband, the defendant's stepfather. The defendant's father lives in the Atlanta, GA area. The defendant has an adult sister who

resides with her grandmother in Roxbury. The defendant has a 16 year old brother who lives with the defendant's mother in Dedham.

The defendant is single. He has an 18 month old daughter with Michelle Ruff ("Ms. Ruff"). The defendant is not under any court order to pay child support. Ms. Ruff resides in Section Eight housing in Jamaica Plain. The defendant lived with Ms. Ruff for the three months prior to his arrest on the above-captioned charge.

The defendant also notes living at various addresses in Roxbury, Dorchester and Dedham. When the defendant was released from state custody in June of 2003 he went to live with his mother in Dedham. He resided there for two weeks before violating his parole.

The defendant's employment history is minimal. During the last three years he has worked for a total of five months. He has had brief periods of employment at McDonald's, Stop and Shop and The Gap. He reports no assets or liabilities.

The defendant has a prior criminal record. He has convictions for possession of a Class B controlled substance, knowingly receiving stolen property (motor vehicle) and possession of a firearm. His record reflects five defaults and two probation violations.

III. The relevant evidence at the detention hearing showed the

following.

The government called Task Force Agent George MacLaughlin ("MacLaughlin"). He testified that he has been a member of the Milton Police Department since 1969 and holds the rank of detective. For the last seven years he has been assigned to the United States Drug Enforcement Administration ("DEA") as a task force agent responsible for narcotics investigations.

In further testimony MacLaughlin stated that in April of 2003 he became involved in a DEA investigation focusing on the Warren Gardens area of Roxbury. He explained that the investigation culminated in mid-April of 2004 with the arrest of numerous individuals.

According to MacLaughlin, during the course of the investigation two members of the Boston Police Department ("BPD"), acting in an undercover capacity, made approximately 40 drug "buys" from approximately 24 individuals. Many of the transactions were recorded on audiotape and/or videotape.

In further testimony MacLauglin stated that he prepared an affidavit setting forth the scope of the investigation. The affidavit, which was admitted as Government Exhibit # 1, delineates where the drug buys occurred, the sellers and the buyers and the weight and type of the sold. MacLaughlin directed this court's attention to Tab 6 of the affidavit, which indicates that on November 6, 2003, the defendant and codefendant Gray sold

2.3 grams of crack cocaine to BPD Officer Adolpho Brito ("Brito"), who was acting in an undercover capacity. The transaction, which was recorded on audiotape, took place on Copeland Street in Roxbury.

Government counsel showed MacLaughlin a large map, which was admitted as Government Exhibit # 2. MacLaughlin testified that the map depicts the Warren Gardens area of Roxbury. Sections of the map were shaded in pink, blue and yellow. MacLaughlin explained that the pink portions of the map represent areas within 1000 feet of a playground, while the blue areas depict areas within 1000 feet of a school. MacLaughlin testified that Copeland Street, which is depicted on the map, is populated by multi-family residences. He added that there is a nearby playground.

On cross examination it was established that an audiotape rather than a videotape was made of the November 6, 2003 transaction in which the defendant is charged. MacLaughlin also stated that the November 6, 2003 drug transaction occurred within the pink and blue areas on the map and thus the defendant would be subject to enhanced penalties based on having sold the drugs within a 1000 foot proximity to either a school or playground.

Defense counsel made a proffer that if released to the custody of his mother, the defendant would be able to be placed in a job based on the representation of Donovan Walker

("Walker"), the CEO of Showdown Youth Development Organization, Inc. of Roxbury. Walker was present in court and defense counsel offered Walker's business card, which was admitted as Defendant's Exhibit # A.

IV. The return of the Indictment in the United States District Court for the District of Massachusetts in this case establishes the existence of probable cause that the defendant committed the crime for which he is charged in the Indictment.

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(C) and (f)(2)(A). The government must prove by clear and convincing evidence that if released the defendant would pose a serious danger to any person or the community. In contradistinction, the government must demonstrate only by a preponderance of evidence that the defendant, if released, constitutes a serious risk of flight or failure to appear. The two different standards are used because of the clear language expressed in the last paragraph of 18 U.S.C. § 3142(f) which states "that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." Congress, by not attaching that language to the risk of flight clause, infers that a lower standard of proof is all that is necessary to establish the government's case.

A. <u>Danger to the Community</u>

This court first addresses the likelihood that the defendant, if released, would be a danger to another person or the community.

The government's case against the defendant is strong. The defendant sold 2.3 grams of crack cocaine to an undercover law enforcement agent on Copeland Street in a residential neighborhood, which is located within 1000 feet of a school and/or a playground. The transaction was recorded on audiotape.

This is not the defendant's first foray into drugs. In 2000 he was convicted of possession of a Class B controlled substance. While on probation on the drug charge he was convicted of possession of a firearm for which he received a mandatory one year sentence of incarceration. The facts giving rise to the present case occurred less than six months after the defendant was paroled on the gun charge. It would appear that the defendant is unable to refrain from criminal conduct.

The defendant did not proffer any credible evidence to detract from the government's assertion that he has committed a serious drug crime involving a narcotic drug and that he is a danger to the community or any person. This court finds by clear and convincing evidence that there is no condition or combination of conditions that will assure the safety of any person or the community if the defendant is released.

15

B. <u>Risk of Flight</u>

Next, this court turns to risk of flight or failure to appear.

Although only 21 years of age the defendant has already been convicted of possession of a Class B controlled substance and possession of a firearm, for which he served a mandatory one year sentence. In both cases he violated his parole. According to the Pretrial Services report, after being paroled to his mother's home in June of 2003, the defendant violated his parole within two weeks. In addition the defendant's criminal record reflects at least five defaults.

The defendant's history of abiding by conditions of release and appearing for court as required is poor. In addition the defendant's employment record is meager and his residential history reflects several moves in recent years.

Based on the totality of the circumstances this court finds by a preponderance of the evidence that there is no condition or combination of conditions that will assure the appearance of the defendant as required.

V. <u>Conclusion</u>

The government has satisfied this court by clear and convincing evidence that no condition or combination of

conditions of release (set forth under 18 U.S.C.§ 3142(b) or (c)) will reasonably assure the safety of any other person or the community if the defendant is released. In addition, this court has found, at least by a preponderance of the evidence, that there is no condition or combination of conditions that will assure the appearance of the defendant as required.

Having evaluated the factors set forth in 18 U.S.C. § 3142(g), this court orders the defendant detained subject to the following conditions:

(1) The defendant be, and hereby is, committed to the custody of the Attorney General for confinement in a corrections facility, separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2) The defendant be afforded reasonable opportunity for private consultation with his counsel; and

(3) On Order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined shall deliver the defendant to an authorized Deputy U.S. Marshal for the purpose of any appearance in connection with a court proceeding.

*Marianne B. Bowler*
**MARIANNE B. BOWLER**
Chief United States Magistrate Judge