UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| vs. | ) ) | Criminal No. 04-10115-RCL |
| KARL LAWRENCE PRESCOTT | ) ) ) | |

Government's Memorandum In Opposition
To Defendant's Motion For Review, Revocation Or Amendment Of The
Detention Order

Introduction

The United States of America, by Michael J. Sullivan, United States Attorney, and David G. Tobin, Assistant U.S. Attorney, hereby files this memorandum in opposition to the defendant's motion to revoke the detention order in the above-captioned action. As set forth more fully below, the defendant failed to present any credible evidence to rebut the statutory presumption against pretrial release and the government presented substantial evidence demonstrating that the defendant posed a substantial risk of danger to the community if released and that no condition or combination of conditions will assure the appearance of the defendant at trial. Accordingly, this Court should not revoke the carefully reasoned detention order prepared by United States Chief Magistrate Judge Marianne B. Bowler after a lengthy evidentiary hearing.

A copy of Chief magistrate Judge Bowler's Memorandum And

Order On Government's Motion For Detention, dated May 12, 2004, is attached hereto as Exhibit A.

## Background And Procedural Posture

From May through November, 2003, the Drug Enforcement Administration ("DEA") conducted an investigation of the widespread distribution of "crack" cocaine in and around the Warren Gardens housing complex in Roxbury, Massachusetts. During the course of the investigation, over forty controlled purchases of "crack" cocaine were made by undercover DEA task force agents from more than twenty subjects. A federal grand jury indicted fifteen of the subjects, a number of other involved subjects have been charged in Massachusetts state court.

On April 8, 2004, a federal grand jury in Boston, Massachusetts handed down an indictment against the defendant charging him with distributing cocaine base in a playground zone in violation of 21 U.S.C. 841(a)(1) and 860(a). The grand jury further charged aiding and abetting in violation of 18 U.S.C. 2.

Shortly before 4:30 p.m. on November 6, 2003, Boston Police Officer Adolpho Brito, working in an undercover capacity and wearing a concealed recording device, walked down Copeland Street in the area of the Warren Gardens housing complex in Roxbury, Massachusetts. Officer Brito immediately noticed two males walking in the direction of a playground at the end of Copeland Street. The two males were later identified as the defendant and

George Terrence Gilchrist.[1]

As Officer Brito continued down the street he observed Spencer Gray[2], whom he recognized, walking in the opposite direction on Copeland Street. Gray tapped hands, as a sign of greeting, with the defendant and Gilchrist and then with Officer Brito. Officer Brito asked Gray if he had anything, which was understood by Officer Brito and Gray to mean did Gray have any "crack" cocaine to sell. Gray responded that he did not have any at that time and that he was waiting for someone to call. Gray asked Officer Brito how much he was looking to spend. Officer Brito responded $200. Gray then turned and called to the defendant and Gilchrist. Gray explained to the defendant and Gilchrist that Officer Brito had $200 and that the defendant and Gilchrist should each sell Officer Brito six. This was a clearly understood by all parties to mean six pieces of "crack" cocaine. Gilchrist asked in a hostile voice who was Brito, to which Gray replied that Brito was cool.

Gilchrist said he only had five, spit out 5 pieces of wrapped "crack" cocaine, and began counting the pieces. The defendant told Gray that he did not have anything on him but he

---

[1] George Terrence Gilchrist has been charged in state court for his participation in the "crack" cocaine distribution that occurred on November 6, 2003.

[2] Spencer Gray has also been indicted by a federal grand jury on narcotics charges stemming from the Warren Gardens investigation.

3

could go and get some. The defendant then walked out of sight by walking through a hole in a fence.

Officer Brito told Gray that he would wait across the street on the steps of 12 Copeland Street. A short time later, the defendant came running back onto Copeland Street, approached Gilchrist, and handed something to Gilchrist. Gilchrist then walked over to Officer Brito and told Officer Brito that they only had eleven. Gilchrist counted the bags containing the "crack" cocaine and found that he had twelve. Gilchrist handed the twelve pieces of "crack" cocaine to officer Brito, who handed Gilchrist $200. Officer later looked at a police created photo book and identified the defendant, gray, and Prescott. The distribution of the twelve pieces of "crack" cocaine took place within one thousand feet of the playground at the end of Copeland Street.

The defendant was arrested on or about April 15, 2004. The defendant has his initial appearance before Chief Magistrate Judge Bowler on April 15, 2004. At the defendant's initial appearance, the government moved to detain the defendant on the grounds that there is no condition or combination of conditions that will reasonably assure (1) the safety of any other person and the community and (2) the appearance of the defendant. 18 U.S.C. §§ 3142 (f)(1)(C) and (f)(2)(A). After the government moved for a three continuance the defendant's detention hearing

4

was scheduled for April 22, 2004.

On that date the court conducted a detention hearing. The government called one witness, Milton Police Officer George MacLaughlin, a member of the DEA task force responsible for the Warren Gardens investigation. The defendant, who was represented by counsel, did not call any witnesses.

On May 12, 2004, Chief Magistrate Judge Bowler issued her seventeen-page Memorandum And Order On Government's Motion For Detention, a copy of which is attached hereto and marked as Exhibit A. In the portion of the decision devoted to dangerousness, Chief Magistrate Judge Bowler noted that "[t]he government's case against the defendant is strong." See Ex. C art p. 15. Chief Judge Bowler went on to point out that this case is not the defendant's first foray into drugs. In 2000 the defendant was convicted of possession of a Class B controlled substance. Additionally, as noted by the court, while on probation on the drug charge the defendant was convicted of possession of a firearm for which he received a mandatory one year sentence of incarceration. The facts of the case now before the court occurred less than six months after the defendant's parole on his gun conviction. Based on the defendant's criminal history, Chief Magistrate Bowler concluded that "[i]t would appear that the defendant is unable to refrain from criminal conduct." See Ex. C, p. 15. The Chief magistrate Judge also

found that "[t]he defendant did not proffer any credible evidence to detract from the government's assertion that he has committed a serious drug crime involving a narcotic drug and that he is a danger to the community or any person." See Ex. C, p. 15.

In the portion of the Memorandum And Order On Government's Motion For Detention pertaining to the defendant's risk of flight, Chief Magistrate Judge Bowler noted that the defendant violated his parole in both his previous drug and gun cases and that the defendant's criminal record reflects at least five defaults. The Chief Magistrate Judge concluded that the "defendant's history of abiding by conditions of release and appearing in court as required is poor." See Ex. C, p. 16.

After noting the above and that the defendant's employment record is meager and his residential history reflects several moves in recent years, the Chief Magistrate Judge held that there is no condition or combination of conditions that will assure the appearance of the defendant as required. See Ex. C, p. 16.

**Argument**

This Court should not revoke the Chief Magistrate's carefully-crafted and well-reasoned detention decision. The decision is supported by the statutory presumption in favor of detention. See 18 U.S.C. 3142(e) and <u>United States v. Palmer-Contreras</u>, 835 F.2d 15, 17 (1st Cir. 1987)(per curium)(The presumption reflects Congressional findings that persons who deal

in drugs often have the necessary resources and foreign ties to escape to other countries) and United states v. Perez-Franco, 839 F.2d 867, 869-70 (1st Cir. 1988)("a large bound is often ineffective in deterring flight"). The Chief Magistrate Judge's decision to detain the defendant is also fully supported by the nature of the evidence against the defendant, and the defendant's background and criminal history.

The defendant's release pending trial endangers the safety of the community. The defendant has gun and drug convictions. He has demonstrated an inability to conform his behavior to the requirements of the law. This Court surely knows the real-life cost of "crack" cocaine on individuals and society. "Crack" cocaine and the violent crime that often accompanies the sale of it have rendered many neighborhoods in our community unsafe places to live and raise a family. The community, particularly the Warren Gardens neighborhood, is at risk if the defendant is released prior to trial.

The defendant cannot be expected to appear for future court appearances. As noted by Chief Magistrate Judge Bowler, in both the defendant's previous cases, one for drugs the other for illegal possession of a gun, the defendant violated the terms and conditions of his parole. Moreover, the defendant's criminal record reflects at least five defaults. The defendant has shown no respect for the authority of courts. The case against the

defendant is strong and he faces the very real prospect of being convicted and incarcerated. With such bleak prospects, the defendant will have every incentive, from his perspective, to leave the jurisdiction of the Court and not appear at trial.

## Conclusion

Based on the foregoing, the government respectfully requests that the Court deny the Defendant's Motion, and that it affirm Chief Magistrate Judge Bowler's detention order.

                                            Respectfully submitted

                                            MICHAEL J. SULLIVAN
                                            United States Attorney

By: /s/ David G. Tobin
                                            David G. Tobin
                                            Assistant U.S. Attorney

DATED:    August 26, 2004

CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery:

    George F. Gormley, Esq.
    655 Summer Street
    Boston, MA  02210

This 26th day of August, 2004.

                        _____
                        DAVID G. TOBIN
                        ASSISTANT UNITED STATES ATTORNEY